McCarthy, J.
Cross appeals from an order of the Supreme Court (Tait, J), entered June 14, 2012 in Tioga County, which partially denied defendants’ motion for summary judgment dismissing the amended complaint.
Plaintiff was employed by defendant Newark Valley Central School District (hereinafter NVCSD) as a probationary physical education teacher, and she served as the coach for the girls’ varsity field hockey team. Todd Broxmeyer, plaintiffs boyfriend at the time who also served as a volunteer coach for the NVCSD girls’ field hockey teams, was arrested and charged with raping a female field hockey player from a different school district. In the course of the investigation, it came to light that plaintiff might have had some involvement in or knowledge of the illegal conduct underlying the allegations against Broxmeyer. Defendants then acted to terminate plaintiffs employment.
Plaintiff commenced this action alleging that defendants maliciously published defamatory oral and written statements about her and that defendants failed to provide her with a name-clearing hearing in violation of her state and federal due process rights.[1] Defendants moved for summary judgment dismissing plaintiff’s amended complaint. Supreme Court partially granted the motion to the extent of finding that one statement at issue was protected by a qualified privilege, but the court otherwise denied the motion. Defendants appeal and plaintiff cross-appeals.
When a governmental employer “ ‘fires an employee and publicly charges that she [or he] acted dishonestly or immorally, due process guarantees the employee an opportunity to defend her [or his] good name, reputation, honor or integrity’ ” (Wilcox v Newark Val. Cent. School Dist., 74 AD3d 1558, 1563 [2010], *1128 quoting Donato v Plainview-Old Bethpage Cent. School Dist., 96 F3d 623, 630 [2d Cir 1996], cert denied 519 US 1150 [1997] [internal quotation marks and citation omitted]). Accordingly, a probationary employee may be entitled to a posttermination name-clearing hearing where “ ‘the [public] employer creates and disseminates a false and defamatory impression about the employee in connection with his [or her] termination’ ” (Matter of Lentlie v Egan, 61 NY2d 874, 875 [1984], quoting Codd v Velger, 429 US 624, 628 [1977]). In order to establish his or her entitlement to such a hearing, a plaintiff must allege “ ‘(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiffs status or rights’ ” (Wilcox v Newark Val. Cent. School Dist., 74 AD3d at 1562, quoting Sadallah v City of Utica, 383 F3d 34, 38 [2d Cir 2004] [internal quotation marks and citations omitted]; see Matter of Swinton v Safir, 93 NY2d 758, 764 [1999]; see also Zarabi v Incorporated Vil. of Roslyn Harbor, 90 AD3d 1037, 1038 [2011]). In other words, the plaintiff must establish “an allegedly defamatory governmental action together with a loss of employment and the dissemination of the stigmatizing material” (Guerra v Jones, 421 Fed Appx 15, 19 [2d Cir 2011]).
Accordingly, plaintiff’s stigma-plus due process claims are linked to her defamation per se cause of action. We therefore consider the arguments together. Plaintiffs defamation cause of action is actually based on four separate statements. Plaintiff alleges that defendant Diane Arbes, principal of NVCSD’s high school, stated at a meeting with several staff members that plaintiff should avoid private one-on-one conversations with students and should take a leave of absence “for the safety of the students.” Arbes also held a meeting with the field hockey team at which, according to plaintiffs allegations, Arbes told the students that plaintiff acquiesced in or did not challenge her termination. Defendant Mary Ellen Grant, NVCSD’s superintendent, provided plaintiff with a statement of reasons for recommending termination, pursuant to Education Law § 3031, which stated, among other things, that plaintiff was aware of Broxmeyer’s conduct that violated NVCSD’s sexual harassment policy and did not report this conduct. Plaintiff also alleges that Grant spoke to parents of field hockey players and advised them that plaintiff acquiesced in or did not challenge her termination.
Defendants bore the initial burden of tendering “sufficient, competent, admissible evidence establishing a prima facie *1129 entitlement to judgment as a matter of law”; only if defendants met that burden was plaintiff required to “produce competent admissible evidence establishing the existence of a material issue of fact which would preclude a grant of summary judgment” (Holly v Morgan, 2 AD3d 1170, 1171 [2003]; see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). In support of their motion, defendants submitted documents, Grant’s affidavit, and deposition testimony of plaintiff, Grant and Arbes. Grant testified that she did not state to anyone that plaintiff acquiesced in her termination, and that the statement-of-reasons letter was not placed in plaintiffs personnel file, but in a separate legal file, and would not be disseminated to anyone. Grant also explained that when a potential employer seeks information about a NVCSD employee, the policy is to only provide the employee’s position and dates of employment, with no further information. Arbes testified that she made the “safety of the students” remark only regarding private conversations with students, and did not recommend a leave of absence, the statement was not made in a defamatory context and was said in a meeting with only relevant staff and union representatives. This would make that statement privileged under the common interest qualified privilege (see Foster v Churchill, 87 NY2d 744, 752 [1996]). Arbes also testified that she never told anyone that plaintiff acquiesced in her termination, although Arbes had earlier testified that she didn’t recall if she ever made such a statement and “might have” said it.
This evidence was sufficient to satisfy defendants’ burden of establishing a prima facie case regarding all of the allegedly defamatory statements except Arbes’ acquiescence statement. A question of fact exists as to whether Arbes’ stated to the field hockey team that plaintiff acquiesced in or did not challenge her termination. Plaintiff was not at the team meeting and did not submit affidavits from any students or faculty who were present, instead relying on her assertion that the statement is false, her own hearsay testimony and equivocal testimony from Arbes’ deposition. Arbes was asked whether she had, from a certain date forward, ever said that plaintiff acquiesced in or did not challenge her termination. Arbes testified that she did not recall and, upon further questioning, that she “might have” said it. A break was then taken, after which defendants’ counsel noted that Arbes had misunderstood the last question and wanted to correct her answer. Plaintiffs counsel did not allow a correction and, upon later questioning by defendants’ counsel, Arbes testified that she did not understand the earlier question, had not said anything about whether plaintiff was challenging her termination, and never made a statement that plaintiff *1130 agreed with or did not challenge her termination. Viewing the evidence in a light most favorable to plaintiff, as the nonmovant (see Kumar v Kumar, 96 AD3d 1323, 1326 [2012]; Reil v Chittenden, 96 AD3d 1273, 1274 [2012]), Arbes’ contradictory deposition testimony creates a credibility question. A trier of fact could accept that she was confused by the question and legitimately corrected herself, or could believe that she understood the question and originally answered it correctly but changed her answer after reflection of its implications and discussion with counsel during the break. This contradictory proof raises a question of fact as to whether Arbes made the acquiescence statement (see Yaziciyan v Blancato, 267 AD2d 152, 152 [1999]; see also Reil v Chittenden, 96 AD3d at 1274; Francis v New York City Tr. Auth., 295 AD2d 164, 164-165 [2002]; Meyer v Moreno, 258 AD2d 315, 316 [1999]; cf. O’Leary v Saugerties Cent. School Dist., 277 AD2d 662, 663 [2000]). Thus, that statement survives as a basis for the defamation per se cause of action and the underlying derogatory statement for the stigma-plus causes of action.
In response to defendants’ motion, plaintiff submitted only a memorandum of law. Defendants submitted a reply with affidavits from Arbes and Jill Keeler, a teacher, coach and president of the teachers’ union. At oral argument on the motion, plaintiff requested, and Supreme Court granted her, permission to file another affidavit, with defendants given time to respond. Plaintiff then submitted the affidavit of a parent averring that Grant stated to that parent that plaintiff acquiesced in her termination.
Supreme Court did not abuse its discretion by granting plaintiff permission to file a late affidavit. Motion papers must be served in accordance with CPLR 2214 and applicable time frames in order to be “read in support of, or in opposition to, the motion, unless the court for good cause shall otherwise direct” (CPLR 2214 [c]). A court may, in its discretion, accept late papers, should the delinquent party provide a valid excuse (see Payne v Buffalo Gen. Hosp., 96 AD3d 1628, 1629 [2012]). The court may consider “ ‘[additional factors relevant . . . including], among others, the length of the delay and any prejudice’ ” (id., quoting Mallards Dairy, LLC v E&M Engrs. & Surveyors, P.C., 71 AD3d 1415, 1416 [2010]). Here, the court did not abuse its discretion by finding that plaintiff proffered a valid excuse, considering the relatively short period of delay experienced by both parties and the lack of prejudice (see Mallards Dairy, LLC v E&M Engrs. & Surveyors, P.C., 71 AD3d at 1416). In that affidavit, a parent averred that Grant stated in a *1131 phone call that plaintiff acquiesced in her termination. Grant acknowledged speaking to the parent by phone but denied making the alleged statement. Considering these conflicting versions of the phone call, Supreme Court correctly denied defendants’ motion for summary judgment regarding Grant’s statements in phone calls to parents under the defamation and stigma-plus causes of action.
Grant’s Education Law § 3031 statement-of-reasons letter cannot be used to support any cause of action. This Court has already determined that the statements made therein were sufficient to implicate plaintiffs liberty interests if the letter were to be “ ‘ “placed in [her] personnel file and . . . likely to be disclosed to prospective employers, ” ’ ” or the dissemination prong was otherwise satisfied (Wilcox v Newark Val. Cent. School Dist., 74 AD3d at 1563, quoting Donato v Plainview-Old Bethpage Cent. School Dist., 96 F3d at 631 [citation omitted]). At that stage, defendants’ prediscovery motion to dismiss was denied on the basis that plaintiff had alleged in her complaint that the letter was contained in her personnel file and it was likely to be disclosed (Wilcox v Newark Val. Cent. School Dist., 74 AD3d at 1564). While a plaintiff must establish that the defamatory statement was made public (see generally Guerra v Jones, 421 Fed Appx at 18), actual dissemination is not required to trigger his or her right to a name-clearing hearing; the Court of Appeals has held that a likelihood of dissemination is sufficient (see Matter of Swinton v Safir, 93 NY2d at 765; see generally People v David W., 95 NY2d 130, 137-138 [2000]). Relying on federal authority addressing the issue, the Court of Appeals noted that “ £[t]he purpose of the requirement [of a public dissemination] is to limit a constitutional claim to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee’s standing in the community or foreclose future job opportunities’ ” (Matter of Swinton v Safir, 93 NY2d at 764, quoting Brandt v Board of Co-op. Educ. Servs., Third Supervisory Dist., Suffolk County, N.Y., 820 F2d 41, 44 [2d Cir 1987]).
In support of the motion for summary judgment, however, Grant averred that the letter “was never a part of [plaintiffs] permanent employment file” and that ££[i]t never entered her file, not even for a second.” She also stated that, although NVCSD maintains the letter in a separate file, it had never been and would never be made available to plaintiffs potential employers. The same facts were reflected in Grant’s deposition testimony. She further testified that NVCSD’s policy with re-
*1132 spect to inquiries from prospective employers was to confirm the hiring date, position held and length of employment, but to provide no additional information. Defendants thus submitted competent admissible evidence sufficient to establish that the letter was never going to be made part of plaintiffs personnel file and that it was unlikely that the letter or its contents would be disclosed to potential employers (see Swinton v Safir, 93 NY2d at 764; Wilcox v Newark Val. Cent. School Dist., 74 AD3d at 1564). Plaintiff testified that she did not know whether the letter was contained in her personnel file, and there is nothing else in the record that raises a material issue of fact with respect to whether the letter was contained in her personnel file or otherwise likely to be disseminated. Given Grant’s testimony regarding NVCSD’s reference policies and her averment that the information would never be made available to future employers, defendants’ submission was sufficient to establish the unlikelihood of future public disclosure of the letter that would injure plaintiffs status or future employment prospects (see Swinton v Safir, 93 NY2d at 764; Wilcox v Newark Val. Cent. School Dist., 74 AD3d at 1564; compare Matter of VanDine v Greece Cent. School Dist., 75 AD3d 1166, 1167 [2010]).* [2]
Arbes “safety of the students” statement was not actionable because, even if made as plaintiff alleges, it fell within a qualified privilege. Qualified privilege provides a complete defense to a claim of slander, and attaches to an otherwise defamatory *1133 statement “made to persons who have some common interest in the subject matter” (Foster v Churchill, 87 NY2d at 751). “ ‘A privileged communication is one which, but for the occasion on which it is uttered, would be defamatory and actionable’ ” (id., quoting Park Knoll Assoc. v Schmidt, 59 NY2d 205, 208 [1983]). The defense does not apply, however, “where the motivation for making such statements was spite or ill will (common-law malice) or where the ‘ “statements [were] made with [a] high degree of awareness of their probable falsity” ’ (constitutional malice)” (Foster v Churchill, 87 NY2d at 752, quoting Liberman v Gelstein, 80 NY2d 429, 438 [1992]; accord Cusimano v United Health Servs. Hosps., Inc., 91 AD3d 1149, 1150 [2012], Iv denied 19 NY3d 801 [2012]). Arbes made the statement at issue at a meeting where she, plaintiff and three other individuals were present. Plaintiff acknowledges that Keeler, the junior varsity field hockey coach and union president, had a common interest in the subject, as did a union employee who was present. The third individual may have had the same interest because Keeler averred that the individual was a union representative. Additionally, she was a guidance counselor, and Arbes averred that guidance counselors were being made available to students who may have had difficulty dealing with the situation surrounding Broxmeyer’s arrest, the police investigation and plaintiff’s suspension and later termination. As all of the persons present for the meeting had a common interest in the subject matter and the record lacks any evidence of malice, Supreme Court correctly determined that Arbes’ statement at the meeting was not actionable based on the qualified privilege.
Defendants contend that the federal stigma-plus claim must be dismissed because plaintiff could have sought the same relief, i.e., a name-clearing hearing, in a proceeding pursuant to CPLR article 78 (see Guerra v Jones, 421 Fed Appx at 19). The availability of such a proceeding to plaintiff defeats her claim that she was deprived of due process (see Hennigan v Driscoll, 2009 WL 3199220, *10-11, 2009 US Dist LEXIS 90881, *31-32 [ND NY, Sept. 30, 2009]). Because plaintiff commenced this action within the time frame required for such a proceeding and sought a name-clearing hearing as relief, we convert this action into a hybrid action/proceeding by substituting a proceeding pursuant to CPLR article 78 for the federal due process cause of action (see CPLR 103 [c]).
Lahtinen, J.P, Garry and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as permitted the first, second and fourth causes of action to proceed based on defendant Mary Ellen Grant’s *1134 statement-of-reasons letter; convert the first cause of action into a proceeding pursuant to CPLR article 78; and, as so modified, affirmed.

. Plaintiff alleged additional causes of action in her original complaint, but four were previously dismissed by Supreme Court and a fifth was dismissed by this Court on a prior appeal (Wilcox v Newark Val. Cent. School Dist., 74 AD3d 1558, 1561-1562, 1564-1565 [2010]).

. Unlike in Gosden v Elmira City School Dist. (90 AD3d 1202 [2011]), cited by Supreme Court, this case does not revolve around information that must be released pursuant to the Freedom of Information Law (hereinafter FOIL). Indeed, while “FOIL imposes a broad duty on government to make its records available to the public” (Matter of Gould v New York City Police Dept., 89 NY2d 267, 274 [1996]), there are certain exceptions (see Public Officers Law § 87). As relevant here, government agencies are permitted to deny access to records that “are inter-agency or intra-agency materials” and are not “statistical or factual tabulations or data[,] . . . instructions to staff that affect the public [or] final agency policy or determinations’ ’ (Public Officers Law § 87 [2] [g]; see Matter of Gould v New York City Police Dept., 89 NY2d at 274). Here, the statement-of-reasons letter would likely qualify as “intra-agency material” and does not appear to fall into any of the above three categories so as to be forced outside the scope of the exception (see Public Officers Law § 87 [g]). Moreover, considering that a probationary teacher may request such a letter upon the decision to either deny him or her tenure or to discontinue his or her services (see Education Law § 3031 [a]), if such a letter were always accessible through FOIL, school administrators could never avoid dissemination for purposes of a stigma-plus claim while simultaneously complying with the mandates set forth in Education Law § 3031. Accordingly, as NVCSD can withhold the information from the public, Supreme Court was incorrect in reaching the conclusion, based on the facts of Gosden, that NVCSD could not “provide assurances that the contents of the pertinent letter will not be disclosed in the future.”